FIRST STATE BANK OF AMARILLO v. JONES. (No. 7989.)†

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 21, 1914. On Rehearing, Dec. 12, 1914.)

1. APPEAL AND ERROR (§ 934*) — PRESUMPTIONS—JUDGMENT.

Where the trial court filed no findings of fact or conclusions of law, the court on appeal must indulge every reasonable presumption in support of the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781, 3782; Dec. Dig. § 934.*]

2. MORTGAGES (§ 319*)—PAYMENT—FINDINGS—EVIDENCE.

A recital in a release executed by the president of a mortgagee bank that the note secured by the mortgage had been paid in full, and that at the time of payment the bank was the owner thereof, is alone sufficient independent of other circumstances to support a finding of payment of the note in full.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 855–863, 875, 913, 1356, 1366; Dec. Dig. § 319.*]

On Rehearing.

3. MORTGAGES (§ 298*)—PAYMENT OF DEBTS SECURED—EFFECT.

Where the original debt secured by mortgage was paid in full, the original lien was dis-

charged, and it could not be continued as against a subsequent judgment creditor of the mortgagor by the execution of a new mortgage after the judgment, purporting to correct the recital in a release that the mortgage had been paid.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 836–854, 864, 871; Dec. Dig. § 298.*]

**4. JUDGMENT (§ 772*)—LIEN—ERROR IN JUDGMENT—EFFECT.**

A mistake in the amount of a judgment does not render the judgment lien ineffective, but until corrected in some proper manner the judgment is valid for the full amount, and the correction does not destroy the lien as of the date of the original entry of the judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1329–1332, 1335, 1337; Dec. Dig. § 772.*]

Appeal from District Court, Clay County; P. A. Martin, Judge.

Action by T. K. Jones against W. S. Roberts and the First State Bank of Amarillo. From a judgment for plaintiff, the First State Bank of Amarillo appeals. Affirmed.

Turner & Wharton, of Amarillo, and W. T. Allen, of Petrolia, for appellant. R. E. Taylor, Wantland & Parrish, and Leslie Humphrey, all of Henrietta, for appellee.

DUNKLIN, J.   T. K. Jones instituted this suit against W. S. Roberts and the First State Bank of Amarillo to foreclose an alleged judgment lien upon land situated in Clay county consisting of two lots in the town of Henrietta and a tract of 103.2 acres. Plaintiff alleged in his petition that the bank was asserting some claim to the property and prayed that the judgment lien sought to be foreclosed be established as superior to any claim asserted by the bank. From a judgment in favor of the plaintiff granting the relief prayed for, the defendant bank alone has appealed.

On the original hearing the judgment was reversed and judgment was here rendered in favor of the bank, but upon a motion for rehearing by appellee Jones the judgment was affirmed. Appellant has now moved for a rehearing, and, in order to set out more fully and more accurately the facts shown in the record, both original opinions are withdrawn, and this is filed as a substitute therefor. The judgment upon which the alleged lien was predicated was rendered in favor of Jones against Roberts on October 8, 1912, and an abstract of same was filed in Clay county on October 9, 1912. The evidence shows that plaintiff's judgment against Roberts was rendered for $12,986.74, and as so rendered it was abstracted. Three days after the rendition of the judgment a remittitur of $860.48 was filed by the plaintiff in the judgment reciting that to that extent the judgment was excessive, and that the error was due to a mistake in calculation of the amount due upon the promissory notes which formed the basis of that suit.

The controversy between Jones and the bank in this suit is a question of priority of liens, the bank claiming a lien upon the land in controversy superior to that of the judgment lien. The following evidence appears in the statement of facts: On December 21, 1911, Roberts executed a deed of trust upon the property in controversy and another tract of land consisting of 50 acres also situated in Clay county to secure the bank in the payment of a promissory note for the principal sum of $5,500, dated December 1, 1911, and due 20 days after date with 10 per cent. interest and 10 per cent. attorney's fees. This deed of trust was duly filed for record in Clay county on December 22, 1911. On April 18, 1912, the bank, acting through its president, Mike C. Le Master, executed a release in words and figures as follows:

"State of Texas, County of Potter.

"Know all men by these presents: Whereas, on the 1st day of December, 1911, W. S. Roberts of Potter County, Texas, did execute, acknowledge and deliver to Mike C. Le Master, trustee, for benefit of First State Bank, Amarillo, of Potter County, Texas, a certain deed of trust on the following described real estate, situated lying and being in the county of Clay in said state of Texas, which deed of trust is recorded in Book 17, page 253, Mortgage Records of Clay County, Texas, to wit: A certain fifty acres of land, which is described by metes and bounds in the above-mentioned deed of trust, and being part of a certain deed recorded in Book 49, page 18, Deed Records of Clay County, Texas, and specifically described in a deed, dated Amarillo, Texas, dated April 17, 1912, executed by W. S. Roberts to E. C. Carter, to secure the prompt payment of one certain promissory note executed by the said W. S. Roberts and payable to the order of First State Bank, Amarillo, Texas, as, follows: One note of fifty-five hundred dollars, due March 1, 1912, and bearing interest from maturity at the rate of ten per cent. per annum; and whereas, said note with accrued interest has been fully paid, and at the time of such payment said note was the property of First State Bank, Amarillo, Texas: Now, therefore, know all men by these presents, that I, Mike C. Le Master, president of First State Bank, Amarillo, of Potter County, Texas, in consideration of the premises and of the full and final payment of said note, the receipt of which is hereby acknowledged, have this day and do by these presents, remise, release and quitclaim unto the said W. S. Roberts, his heirs and assigns, the lien heretofore existing on said premises by virtue of said deed of trust, and do hereby declare the same fully released and satisfied."

That release was properly filed for record in Clay county on May 27, 1912. On October 15, 1912, W. S. Roberts executed another deed of trust to Mike C. Le Master, trustee for the First State Bank of Amarillo, which was filed for record in Clay county October 17, 1912, and duly recorded in Deeds of Trust Records of that county, upon all the land described in the original deed of trust, except that described in the release, which recited the execution and record of the deed of trust dated December 21, 1911, also the execution and record of that release of date April 18, 1912, from the First State Bank of

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Amarillo to W. S. Roberts, stating, in substance, that said release was intended only to release the two tracts of land therein described and referred to containing one 5-acre tract and one 50-acre tract, two of the tracts described in the deed of trust of date December 21, 1911; that the execution of said release was in consideration only of the payment of the sum of $900 and not the whole indebtedness secured by the deed of trust; that it was the intention of all the parties to the instrument that the release should be made to said 55 acres only and no more, and that the recital in the release of the full payment of the $5,500 note was a mistake made through inadvertence on the part of the person who prepared the release and on the part of Mike C. Le Master, president of the bank. This instrument further stipulated that it was given to secure the payment of the balance due the bank evidenced by a note for $4,798.85, dated September 9, 1912, due November 1, 1912, with 10 per cent. interest from maturity and 10 per cent. attorneys' fees; that said note was in renewal of said original indebtedness of $5,500 secured by the first deed of trust; and that the deed of trust then being executed was given to continue in full force and effect the original deed of trust executed by Roberts and mentioned above.

The defendant also introduced in evidence the following promissory notes all executed by W. S. Roberts, payable to the order of the First State Bank of Amarillo: The first for the principal sum of $5,500 dated December 1, 1911, due 90 days after date; the second for the principal sum of $4,798.85, dated September 6, 1912, due November 1, 1912; the third for the principal sum of $5,253.59, dated August 8, 1913, due October 1, 1913. It does not appear from the statement of facts that either the second or third note purports upon its face to be a renewal of any other note. Mike C. Le Master testified upon the trial as follows:

"I was president of the First State Bank of Amarillo during the latter part of 1911, the year of 1912, and the first half of 1913, and was president of said bank on the 18th day of April, 1912. I am now familiar with the release executed by me as president of said bank to W. S. Roberts, dated April 18, 1912, recorded in Volume 67, page 512, Deed of Trust Records of Clay County, Tex., but was not familiar with the contents thereof at the time of its execution. The statement in said release to the effect that the note for $5,500, secured in the deed of trust of December 21, 1911, recorded in Volume 17, page 253, Deed of Trust Records of Clay County, Tex., made by W. S. Roberts to me as trustee for First State Bank of Amarillo, is not true. The note mentioned has never been paid, except in part. There was paid on it $900 about the time of the execution of said release. An error of the stenographer in failing to cancel a portion of the printed form of said release, which was overlooked by myself when signing such release, accounts for the mistake in said release. My intention was to release certain lands, about 55 acres, described in a certain deed from W. S. Roberts to E. C. Carter, dated the 17th day of April, 1912, and now of rec-

ord in the Deed Records of Clay County, Tex., in Volume 66, page 110, and it was not my intention to release all the property covered by said deed of trust, dated December 21, 1911, of record in the Deed of Trust Records of Clay County, Tex., in Volume 17, page 253. $900 was paid about the time of the execution of said release. There remains now $5,253.59 principal and interest due First State Bank of Amarillo on said note. I am not now employed in any capacity by the First State Bank of Amarillo. The first time I learned that the release did not set forth the facts was about the 15th day of October, 1912. It was discovered when Mr. Roberts offered to deed us the property in settlement of his debt to us, at which time we sent our attorney, Mr. Thos. E. Turner, to Henrietta to look into the title of this property, and he discovered the error at that time, and instructed us to have a corrected deed of trust executed, which we did, and the same is filed in the Deed of Trust Records of Clay County, Tex., and recorded in Volume 17, pages 429, 430."

Defendant W. S. Roberts testified as follows:

"I signed the deed of trust dated December 21, 1911, to secure the payment of a note for $5,500 described in said deed of trust. There has never been paid on said note except about $900, at the time I sold the land to E. C. Carter described in my deed to him, dated April 17, 1912, which has already been introduced in evidence, and I have paid in addition thereto some small payments of interest, so that there is now due on said original indebtedness the principal sum of $5,253.59, evidenced by the note made by me to said bank and already introduced in evidence. That note was but a continuation of the old indebtedness secured by said original deed of trust, and I executed and delivered to said bank from time to time renewal notes, so that this last note for $5,253.59 is a continuation of an unbroken chain of notes given by me for said indebtedness. When I sold the land to E. C. Carter, it was necessary for me to get a release of the 55 acres I was selling to him in order to make him a good title, and I agreed with the bank that I would pay $900 out of the money received from him and the sale of the note I got from him if the bank would release these two tracts of land. I got a cash payment of $500 from Mr. Carter and sold the notes he gave me and paid the bank $990 as soon as I sold the notes. The bank executed a release, but I never did see this release. I think it was sent to a bank at Henrietta along with my deed to Mr. Carter to be delivered to Mr. Carter. I did not intend for the bank to release anything but the 55 acres, nor did I ever know that the release recited that the whole $5,500 note had been paid until about the time I executed the second deed of trust on October 15, 1912. Mr. Le Master told me that there was some mistake in the release which he desired to have correct, and I then executed the second deed of trust dated October 15, 1912, in order to correct the mistake in the release wherein it was recited that the whole of the note had been paid. At the time the plaintiff's abstract of judgment was filed in Clay county, I owed the First State Bank of Amarillo a note for $4,798.85, dated September 6, 1912, due November 1, 1912, and it was secured by said original deed of trust of December 21, 1911, and was a continuation of the original indebtedness secured by said original deed of trust, after deducting the $900 which I had paid; this last note being the amount due with whatever interest I owed the bank. It was understood between me and the bank all the time, of course, that these renewal notes were secured by said original deed of trust."

There was no evidence showing the particular items and dates of the several inter-

est payments testified to by Roberts. Plaintiff introduced no witness to contradict the testimony of Mike C. Le Master and Roberts. The two deeds of trust, the three promissory notes, and the release set out above were all specially pleaded by the two defendants, who further pleaded that only $900 was paid to the bank by Roberts at the time the release was executed and that the recitals contained in the release of full payment of the original debt were inserted by mutual mistake of the parties to that instrument.

From the facts recited above, it will be noted that the renewal deed of trust was filed for record six days subsequent to the record of the abstract of judgment under which plaintiff claimed a lien.

Appellant insisted that no lien was created by the filing of the abstract of judgment, since it did not show the correct amount due upon the judgment; in other words, that the remittitur entered should be construed as having the same legal effect as if a payment had been made upon the judgment on the date of its rendition. Appellant insists further that the uncontroverted evidence showed that the recitals contained in the release of full payment of the original debt was a mutual mistake; that the equitable right to correct the mistake as was done by the second deed of trust dated October 15, 1912, and recorded October 17, 1912, was not affected by our registration statutes, and hence the lien shown by the original deed of trust continued in force to the exclusion of any judgment lien acquired by the plaintiff under such decisions as Grace v. Wade, 45 Tex. 522, Blankenship v. Douglass, 26 Tex. 226, 82 Am. Dec. 608, Cetti v. Wilson, 168 S. W. 996, and other decisions there cited. The evidence relied on to conclusively establish such mutual mistake consists chiefly of the testimony of Le Master and Roberts set out above, the execution by Roberts of the second deed of trust, and the second and third promissory notes subsequent to the date of the release, and the fact that the release refers specifically to the original deed of trust and does not purport to release any property except the 50 acres.

[1, 2] The trial was by the court without the aid of a jury, and no findings of fact or conclusions of law are filed by the trial judge. We must indulge every reasonable presumption to be drawn from the record which would support the judgment rendered. We are of the opinion that the specific recitals in the release executed by the president of the bank that the original $5,500 note had been paid off in full, and that at the time of such payment the bank was the owner thereof, such recitals being against the interest of the bank, were sufficient of themselves, independent of other circumstances noted above, to support a finding by the trial judge that the recitals were true. See

3 Jones, Blue Book of Evidence, § 437; Parker v. Beavers, 19 Tex. 406; E. L. & R. R. Ry. v. Garrett, 52 Tex. 133. If the note was thus paid, then the lien upon the property in controversy, as well as the 55 acres specifically mentioned in the release, was discharged as a matter of course, and the judgment of the trial court in favor of plaintiff against the bank must be affirmed, irrespective of any question as to what would have been the relative rights of plaintiff and the bank in the absence of such payment. In its answer the bank sought to establish the lien asserted against the property in controversy as against Roberts, who in his answer, in effect, admitted that claim, and judgment was rendered in favor of the bank against Roberts for that relief but subject to the superior lien of plaintiff.

And as Roberts has not appealed, that part of the judgment establishing the lien against him is not disturbed, but in all other respects the judgment is affirmed, and appellant's motion for rehearing is overruled.

### On Rehearing.

[3] As shown by its own recitals, the second deed of trust executed by Roberts was not executed upon any new consideration passing from the bank to Roberts, but was executed for no other purpose than to correct the alleged mistake in the recitals in the release that the original indebtedness had been fully paid and to continue in force the original deed of trust given to secure its payment. If the original debt had been paid in full, as found by the court, then the original lien was discharged, and, if it was dead at the time the second deed of trust was executed, that instrument could not continue it in force as against Jones, and for that reason the second deed of trust could be given no effect.

[4] The mistake made in the amount of the judgment in favor of Jones did not render the judgment lien ineffective as contended by appellant. Until corrected in some proper manner, it was valid for the full amount, and the correction entered did not operate to destroy it any more than would the entry of a credit upon a judgment after it had been properly abstracted.

Except as shown above, appellant's motion for further findings is overruled.

Appellant's motion for rehearing, also, is overruled.